# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

TERRENCE R. PESTEL,

    Plaintiff,

v.

GULFSTREAM AEROSPACE CORP.,

    Defendant.

No. 09 CV 6113
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

This memorandum opinion addresses only the question of whether the Japanese Product Liability Law of 1994 applies to this action. Utilizing Illinois choice of law rules, I conclude that Illinois state law governs any private rights of action involved in the case. I expressly leave open for another day the question of federal preemption.

BACKGROUND

Plaintiff Terrence Pestel, an Illinois citizen, has been an airplane pilot since 1968. He has flown primarily civilly and commercially, but he also served as a military pilot in the Vietnam war.[1] In the time frame relevant here, Pestel was employed by the McDonald's Corporation as a pilot for its executive fleet of aircraft.

On December 21, 2002, Pestel was the pilot for a G-IV executive aircraft owned by McDonald's and built by Gulfstream Aerospace Corporation ("Gulfstream" or "Defendant"). He was set to pilot the Tokyo to Anchorage leg of a flight that had originated in Illinois and was ultimately set to return to Illinois (McDonald's is headquartered in Oak Brook, Illinois). While on the tarmac at Narita New Tokyo International Airport, Pestel began his pre-flight inspection of

---

[1] Though it has no bearing on the merits of this case, the court commends Plaintiff for his wartime service.

the aircraft. After conducting a portion of the check involving an aft compartment of the plane, he descended a retractable ladder that is installed in the aircraft, lost his footing, and fell, causing substantial injuries. Pestel ultimately lost his pilot's license because he has been unable to pass the required medical examinations based on his injuries.

Plaintiff sued Defendant (a Georgia corporation headquartered in Georgia), the manufacturer of the aircraft, in a previous matter. That matter was dismissed without prejudice, and this present case was thereafter filed on September 30, 2009. The new case is substantially the same as the old one, with the exception of a new claim brought under the Japanese Product Liability Law of 1994.

Defendant moves for summary judgment as to all counts. Plaintiff moved to have me first consider a conflict of laws question centered around the viability of Plaintiff's claim under the Japanese product liability law. I granted that motion, and having done so I find that Japanese law does not apply to this case; Illinois law does.

I expressly leave for a later date the question of whether Illinois law is, in turn, preempted by federal law. I note here that Defendant's briefing on the current motion is couched in choice-of-law language, but it argues that United States federal law should govern. This is preemption, an issue I leave open for another day. *See Desiano v. Warner-Lambert & Co.*, 467 F.3d 85, 88 n. 2 (2d. Cir. 2006) (noting with approval district court judge's consideration of choice-of-law provision before preemption).

ANALYSIS

In determining which jurisdiction's law applies, I employ Illinois choice-of-law principles. *Klaxon Co. v. Stentor Mfg. Co.*, 313 U.S. 487, 496 (1941); *Carris v. Marriott International, Inc.*, 466 F.3d 558, 560 (7th Cir. 2006). Illinois uses the "most significant

relationship" test from the Second Restatement of Conflicts of Laws. *See Esser v. McIntyre*, 661 N.E.2d 1138, 1141 (Ill. 1996); *accord Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915-916 (7th Cir. 2006). For tort issues, the test outlines four key factors in making the choice: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145. The factors are to be evaluated according to their relative importance with respect to the particular issue. *Id.* The factors are to be considered in light of seven conflicts principles: (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied. *Id.* at § 6.

The test is sometimes conceived of as a presumption - reduced from the previously rigid rule of *lex loci delicti*[2] - that the law of the place of the tort is the law that should govern. *Kamelgard v. Macura*, 585 F.3d 334, 341) (7th Cir. 2009). The injury here took place at Narita New Tokyo International Airport in the country of Japan, so the going-in assumption must be that Japanese law applies.

But presumptions can be overcome, and analysis of the factors as applied in this case point away from Japanese law. It is true that the injury took place in Japan, while the airplane

---

[2]"Rigid," because there is no tort without injury, *see Rozenfeld v. Med. Protective Co.*, 73 F.3d 154, 155-56 (7th Cir. 1996), so the situs of injury essentially pre-ordained the substantive law.

3

was on a tarmac at the Narita airport. The first factor clearly points to Japan. The conduct that caused the injury took place half a world away, in Georgia, where the G-IV was manufactured and the ladder installed.[3] Moving to the third factor, Plaintiff is an Illinois citizen. Gulfstream Aerospace is a Georgia Corporation with its principal place of business in Georgia. McDonald's Corporation, which intervened to secure a lien on a workmen's compensation claim, is incorporated in Delaware but headquartered in Illinois. The nationality of the parties (which according to the Restatement is to be considered in addition to the domicile) is American, not Japanese. Finally, Illinois is the place where the relationship between the parties is centered. This is because at the time Plaintiff was injured, he worked for the McDonald's Corporation, based out of their Illinois headquarters. McDonald's owned the G-IV at issue, and Plaintiff flew the aircraft as a pilot based out of Illinois.

So we are left with Japan, Georgia, and Illinois as candidate sources of law. Japan as the situs of the injury was the presumptive choice, but the fact that Plaintiff tumbled down a ladder built into an aircraft that happened to be on a tarmac there is merely "fortuitous." By all accounts, the plane was on the ground in Tokyo for a matter of hours as part of a round trip to and from the United States, and specifically Illinois. Though from different states, all parties are nationals of the United States. In *Schulze v. Illinois Highway Transp. Co.*, 423 N.E.2d 278 (Ill. App. Ct. 1981), the Illinois Appellate Court determined that when a bus operated by defendants from Illinois and occupied by plaintiffs who were also from Illinois was involved in an accident in Michigan, Illinois tort law still applied. The court emphasized the round-trip nature of the

---

[3] I emphasize here that Illinois's test specifically creates separate factors for the injury and the injury-causing conduct, in contrast to the old analysis which simply considered where the "tort" (read: injury) occurred. *See Rozenfeld* 73 F.3d at 154, 155-56; *c.f. Abad v. Bayer*, 563 F.3d 663, 669 (7th Cir. 2009).

journey and found the fact that Michigan was the situs of injury was merely "fortuitous." *Schulte* is one in a line of cases where accidents involving either aircraft or automobiles on long or round trip journeys lead to the conclusion that the situs of the injury is not of significant importance. *See Labuda v. Schmidt*, 2005 U.S. Dist. LEXIS 20948 (N.D. Ill. Sept. 19, 2005) (discussing fortuity and citing cases). In fact, it was these sorts of cases that prompted Illinois and other states to move away from *lex loci*. *See id.* (discussing *Ingersoll v. Klein*, 262 N.E.2d 593, 595 (Ill. 1970)).

Given the nature of the claims here, which in simple terms point to Gulfstream's installation of a dangerous ladder, the fact that the plane (and hence, the ladder) at issue were merely parked briefly in Japan counsels against applying Japanese law to this case.

That leaves Georgia and Illinois, and the call between these states is quite close. Plaintiff is from Illinois and Defendant, Georgia. So domicile essentially cancels out, *see Abad v. Bayer Corp.*, 563 F.3d 663, 669 (7th Cir. 2009), leaving the location of the conduct (the manufacturing of the G-IV took place in Georgia) and the center of the parties' relationship, Illinois. This is admittedly quite close, but on the facts here Illinois seems the superior choice. Though Georgia has some interest in ensuring that products built within Georgia state lines are safe, Illinois has a decided interest in protecting its citizens from potentially harmful products.

Finally, among all the candidate jurisdictions, the parties would most likely expect Illinois law to govern them, considering that Plaintiff and Defendant only came together because of the fact that McDonald's Corporation's Illinois headquarters purchased this aircraft, brought it to Illinois, and had the Plaintiff (himself an Illinois citizen), fly it to and from the state of Illinois. Expectations are an important part of the analysis, *see Spinozzi v. ITT Sheraton Corp.*, 174 F.3d 842, 846 (7th Cir. 1999) (citing *Esser*, 661 N.E.2d at 1142; RESTATEMENT (SECOND) OF

5

CONFLICT OF LAWS, supra, § 6(2)(d)) and here they break a virtual tie between Georgia and Illinois, and point to Illinois.

SUMMARY

Choice of law analysis points to Illinois. I emphasize again that this decision does not address the question of whether Illinois law is preempted by federal aviation law, a complex area that continues to evolve. *See Elassaad v. Independence Air., Inc.*, 613 F.3d 119 (3d Cir. 2010); *Martin v. Midwest Express Holdings, Inc.*, 555 F.3d 806 (9th Cir. 2009). I leave that for another day.

Defendant's partial motion for summary judgment against the application of Japanese law is GRANTED IN PART.

ENTER:

*[signature: James B. Zagel]*

James B. Zagel
United States District Judge

DATE: July 26, 2011